## A92A0775. YOUNG v. THE STATE.
(422 SE2d 227)

BEASLEY, Judge.

Appellant was convicted of kidnapping Linda Poss, OCGA § 16-5-40, and committing an aggravated assault upon her by cutting and stabbing her with a knife. OCGA § 16-5-21 (a) (2). He was given consecutive 20-year sentences.

Appellant and the victim had been involved in a romantic relationship and had lived together. Their relationship ended, and the victim had become romantically involved with Reno Jones. Appellant appeared at the victim's house and threatened to kick the door down if she did not open it. She complied, whereupon he pulled her out of the house and down the street. Jones was in the victim's house at this time, but he left soon afterwards. After dragging the victim down the street, appellant hit her with a piece of iron and threatened to kill her. He then dragged her back to her house and left her after she gave him food stamps.

He later returned and again dragged her down the street, beat her, and threatened to kill her. He dragged her back and remained at her house throughout the night. He continued to hit her, and he threw a knife at her, which hit her defensively raised arm. The following morning she ran next door and called the police, who arrested appellant. As they put him in the car, he threatened her.

On the day appellant was released, he returned to the victim's house, but she ran to a neighbor's and called the police. They came and could not find appellant, who returned after they left. He saw the victim at the neighbor's house and yelled to her that "you can run, but you can't hide. He said I am going to get you, bitch. I am going to get you. Last thing I do, I am going to get you." Appellant continued to walk by the neighbor's house and threaten the victim.

She returned home and later that evening appellant also returned. She fled but encountered him on the street. He chased her, grabbed her, stabbed her in the back with a knife, and told her to die. The knife penetrated her kidney and intestines. She fell forward, and he stabbed her in the head. She began kicking, and he stabbed her leg. He stuck the knife in her thigh. As he was coming down with the knife again, she grabbed it but he took it back. He straddled her and began to stab her again but was shot by Reno Jones. Appellant got off the victim and she ran.

Jones testified that he could see appellant and the victim struggling while he sat on his porch. He ran to her assistance. Appellant had a pistol in his back pocket. Jones grabbed it and shot appellant in the thigh. Appellant attempted to strike Jones with the knife, and Jones shot him again.

1. Appellant contends that the trial court erred in admitting a

knife in evidence, because there was an insufficient showing that it was the knife used to stab the victim.

Jones testified that he got a very good look at the knife because appellant had threatened him with it at point blank range before he shot him; the knife used by appellant had a distinct handle and the shape of the blade was distinct; and the knife admitted in evidence had these features. The physician who treated the victim's wounds testified that stab wounds, which had penetrated far through her back, required a knife with a long blade such as the one admitted in evidence.

"Under these facts, the trial court properly admitted the knife into evidence. As long as the state presents sufficient evidence from which a rational trier of fact could conclude that the [assault] was committed with the use of a knife, it makes no material difference whether the knife actually admitted into evidence was the one actually used or was only similar to the knife used by the defendant. [Cit.] The evidence was sufficient to authorize the jury to find that the knife admitted into evidence was the weapon used by appellant. [Cit.]" *Carswell v. State*, 163 Ga. App. 743, 744-745 (2) (295 SE2d 548) (1982).

2. Appellant contends that the trial court erred in denying his motion for mistrial after the victim on three occasions during her testimony began crying uncontrollably, necessitating breaks in the proceedings.

The court denied the motion, noting that although the victim had become emotional at times, these episodes in their entirety were not of such a consequence that it would deprive appellant of his right to a fair trial. We find no abuse of discretion. See, e.g., *Middlebrooks v. State*, 156 Ga. App. 319, 320 (2) (274 SE2d 643) (1980).

Appellant complains that the court did not give curative instructions to the jury to the effect that its decision should not be based on sympathy, etc. Appellant did not request any such instructions. It is only where the accused would be denied a fair trial in the absence of corrective instructions that such must be given even in the absence of a request or a mistrial declared. See *Middlebrooks*, supra; *Hamilton v. State*, 155 Ga. App. 799 (2) (272 SE2d 763) (1980). That is not what transpired here.

3. Finally, appellant contends he was entitled to a directed verdict of acquittal on the kidnapping charge, because the victim failed to cry out to people in her house and in the neighborhood; and, given the fact that she had not testified truthfully (as to whether Jones had been in her house, as to whether he had shot appellant, and as to the number of children she has) her credibility was such that a rational trier of fact could not have concluded beyond a reasonable doubt that she did not go voluntarily based upon her testimony to that effect.

Under the totality of the circumstances, the evidence was sufficient to have authorized any rational trier of fact to find beyond a reasonable doubt that appellant abducted the victim without lawful authority or warrant and held her against her will. OCGA § 16-5-40 (a). The test of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) is met.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 8, 1992.

*J. Robert Joiner,* for appellant.
*Lewis R. Slaton, District Attorney, Charles W. Smegal, Carl P. Greenberg, Assistant District Attorneys,* for appellee.